IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

UNITED STATES OF AMERICA                                              PLAINTIFF

v.                           CASE NO. 5:15-CR-50036

TYJUAN COOPER                                                         DEFENDANT

## MEMORANDUM OPINION AND ORDER

On June 3, 2015, Tyjuan Cooper was indicted on one count of being a felon in possession of a firearm. Cooper entered a plea of not guilty at his July 22, 2015 arraignment, at which he was represented by appointed counsel. On August 12, 2015, Cooper filed an unopposed Motion for Mental Competency Hearing (Doc. 12), requesting a mental competency evaluation and a hearing to determine his competency to stand trial. The Court granted his Motion a day later (Doc. 13), and Cooper underwent a psychiatric evaluation at the Federal Correctional Institution in Fort Worth, Texas. The Court received the ensuing psychiatric report (Doc. 14), signed by Doctors Randall Rattan and Lisa Bellah, as well as a psychology intern named Travis Tomford, on November 4, 2015. The report concluded that Cooper was competent to stand trial. A month later on December 4, 2015, the Court held a Competency Hearing, at which Dr. Rattan testified via video conference. The Court took the matter of Cooper's competency under advisement at that time. It now finds by a preponderance of the evidence that Cooper is competent to stand trial.

## I. DISCUSSION

To be competent to stand trial, a defendant must have "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding" and "a rational as well as factual understanding of the proceedings against him." *Dusky v. United States*, 362 U.S. 402, 402 (1960). Where there is "reasonable cause to believe that the defendant may presently be suffering from a mental disease or defect rendering him . . . unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense," the Court shall order a hearing to determine the defendant's competency to stand trial. 18 U.S.C. § 4241(a). In such a case, the Court may order a psychiatric or psychological examination, to be filed with the Court prior to the date of the hearing. 18 U.S.C. § 4241(b). At the hearing, the defendant "shall be afforded an opportunity to testify, to present evidence, to subpoena witnesses on his behalf, and to confront and cross-examine witnesses . . . ." 18 U.S.C. § 4247(d). The defendant shall also have the right to be represented by counsel. *Id.* If, after the hearing, the Court finds that the defendant is presently unable to understand "the nature and consequences of the proceedings against him or to assist properly in his defense," he will be committed to the custody of the Attorney General for further proceedings to determine whether he can achieve competency in the foreseeable future. 18 U.S.C. § 4241(d). The burden of proof is "by a preponderance of the evidence." *Id.* While the circuits are split on which party carries this burden, *see United States v. Whittington*, 586 F.3d 613, 617-18 (8th Cir. 2009) (recognizing the circuit split), the Eighth Circuit

2

places the burden on the defendant to prove incompetence by a preponderance of the evidence. *Id.* at 618.[1]

The facts of this case are somewhat unique, as it is not contended that Cooper suffers from a mental illness that affects his competence. Instead, it is Cooper's intellectual abilities which defense counsel contends render him incompetent to stand trial. As a part of his court-ordered psychological evaluation, Cooper scored an IQ of 70 on the Weschler Adult Intelligence Scale – Fourth Revision, a mark placing him in the "Borderline range of functioning." (Doc 14, p. 7). Another intelligence test placed his sentence comprehension skills at a third-grade level, his word reading at a fifth-grade level, his spelling at a fourth-grade level, and his math computation skills at a fourth-grade level. *Id.* These results are consistent with the result of a 2009 examination administered to determine Cooper's eligibility for Social Security Disability Income. Cooper scored an IQ of 67 on that examination. *Id.* at 4. However, the Court finds relevant the fact that Cooper scored significantly higher on a 2001 examination affecting his eligibility for a GED program. Cooper scored an IQ of 85 on the non-verbal portion of that examination. Dr. Rattan testified, and this Court agrees, that these outcomes suggest that Cooper's test results are at least somewhat determined by his performance incentives. When he had incentive to perform poorly, in order to receive disability income or avoid a criminal trial, Cooper performed worse than when he had incentive to perform better, to gain admission to a GED program.[2]

---

[1] To the extent that the proper allocation of the burden is in any doubt, the Court does not find the issue at all dispositive. It would find the defendant to be competent by a preponderance of the evidence regardless of which party has the burden.
[2] Dr. Rattan testified that there were no intervening events between 2001 and now that would cause Cooper's intellectual functioning to drop.

While even Cooper's higher score of 85 suggests that his intellectual functioning is sub-par, there are other indicia in the record that lead this Court to believe that he is competent to stand trial. Namely, Cooper was able to articulate a basic understanding of: (i) his charges and of the severity of the charges; (ii) the role of the judge; (iii) the role of the jury; (iv) the role of witnesses; (v) the role of the prosecution; (vi) and the role of his counsel. (Doc. 14, p. 8). Delving into some intricacies of a criminal trial, he understood that he should not talk to the prosecutor outside the presence of his counsel, identified the benefits and dangers of testifying, and understood the possible outcomes of his case. *Id.*

Cooper also showed a "very good" understanding of the federal criminal justice system and a "good" understanding of Bureau of Prison policies. *Id.* at 9. For example, Cooper understood that, during a previous stint in prison, he was ineligible for the early release benefit of the Bureau's Resident Drug Abuse Program ("RDAP") because of a two-point enhancement in his PSR for possessing a firearm. *Id.* Upon realizing that he was ineligible for early release, Cooper decided not to partake in the RDAP program. This evinces a reasoned, logical decision-making process based on a cost-benefit analysis. It also evinces an ability to understand the fairly nuanced concept that a prisoner may be eligible to participate in the RDAP program, but at the same time may not be eligible for the early release benefit associated with completing that program. The Court believes that such logical reasoning abilities would be rare, if not wholly absent, amongst the population of persons who cannot understand the nature and consequences of criminal proceedings, nor assist their attorneys with their defense.

4

Indeed, Dr. Rattan testified that many inmates could not understand the RDAP concept that Cooper apparently grasped.

Also of note is Cooper's criminal history. Cooper has been convicted of several crimes in the past, including in this Court, and has never been found to be incompetent.[3] (Doc. 5, pp. 3-5). His criminal history also reveals that he was arrested and subsequently convicted for Driving While Intoxicated in 2010 after failing field sobriety tests and registering a .11 on an alcohol-breath test. In 2014, Cooper was arrested for Driving Under the Influence. This time, after failing the field sobriety tests, Cooper refused to submit to a breath test. *Id.* at 4. This suggests that Cooper assessed his risk of failing the alcohol-breath test, understood the consequences of failing the test, and either understood and applied legal advice he had received in the past, or independently determined, that refusing to submit to the test could be legally beneficial.

Lastly, Cooper's counsel insinuated at the Competency Hearing that he was frustrated with his client's perceived inability to understand his legal advice. Part of this frustration appears to stem from Cooper's insistence on proceeding to trial, rather than entering into a plea agreement with the government, despite the evidence against him. To the extent that this is argued as a basis for finding Cooper incompetent, the Court is unpersuaded. This is so for two reasons. First, when Cooper was indicted on Possession with Intent to Distribute Crack Cocaine in 2000, he did enter into a plea agreement with the government. *See Plea Agreement, United States v. Tyjuan Cooper,* 5:00-cr-50040 (W.D. Ark. Nov. 27, 2000). Second, "a decision to go to trial should not

---

[3] To be clear, the Court does not find that Cooper's prior convictions and apparent competency to stand trial then have any preclusive effect on the instant case. The Court merely considers the prior convictions to be evidence of Cooper's competency.

support a finding of incompetence." *Whittington*, 586 F.3d at 619 (quoting the district court in that case, and affirming its competency determination based on its "sound reasoning," at 620). The Court agrees with the district court in *Whittington* that concluding otherwise would be troubling, as it would suggest that Cooper "must be crazy if he is exercising his constitutional right" to have a jury find him guilty beyond a reasonable doubt. *Id.*

Ultimately, the Court agrees with the conclusions of Dr. Rattan and the psychological report that Cooper is competent to proceed to trial. Cooper has not carried his burden to prove his incompetence by a preponderance of the evidence. The Court finds that Cooper's level of intellectual functioning is not so low that he lacks the "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding" or "a rational as well as factual understanding of the proceedings against him." *Dusky*, 362 U.S. at 402.

## II. CONCLUSION

For the reasons stated herein, the Court finds the Defendant, Tyjuan Cooper, to be **COMPETENT** to stand trial. The Court will therefore enter a separate Order resetting the date for a jury trial in this matter.

IT IS SO ORDERED on this 30th day of December, 2015.

TIMOTHY L. BROOKS
UNITED STATES DISTRICT JUDGE